APPEARANCE
Plaintiff: Robert V. Lucas, Attorney, Selma, North Carolina, appearing.
 Patterson, Dilthey, Clay Bryson, Attorneys, Raleigh, North Carolina; Ronald C. Dilthey, appearing.
Defendant: Brooks, Stevens Pope, Attorneys, Cary, North Carolina; Kathlyn C. Hobbs, appearing.
 ***********
The Full Commission has reviewed the Interlocutory Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Gheen. The appealing party has shown good grounds to reconsider the evidence. The Full Commission REVERSES the Interlocutory Opinion and Award and enters the following Opinion and Award.
 *********** EVIDENTIARY RULINGS
Defendant motioned through its brief to the Full Commission for the Commission to take judicial notice of Resolution R-02-33, RejectingWorkers' Compensation Settlement Agreement — Melva D. Lee dated June 17, 2002. Plaintiff objected to the admission of the Resolution. The Full Commission hereby declines to take judicial notice of the Resolution. See, Surplus Co. v. Pleasants, 263 N.C. 587, 139 S.E.2d 892
(1965). Upon good grounds shown, the Full Commission reopens the record to receive Resolution R-02-33 as part of the evidence of record. N.C. Gen. Stat. § 97-85.
Defendant has renewed its motion to dismiss, which was denied at the hearing before the Chief Deputy Commissioner. The Full Commission denies defendant's motion to dismiss.
The Deputy Commissioner's Interlocutory Opinion and Award is appealable to the Full Commission because the failure to review the Opinion and Award would result in the prejudice of a substantial right. See, Littlev. Stogner, 140 N.C. App. 380, 536 S.E.2d 334 (2000), disc. rev. denied,353 N.C. 377, 547 S.E.2d 813 (2001); Plummer v. Kearney, 108 N.C. App. 310,423 S.E.2d 526 (1992).
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before Chief Deputy Commissioner Gheen as:
 STIPULATIONS
1. An employer-employee relationship existed between the parties at the time of the incident.
2. Defendant was the duly qualified employer at the time of the incident and was self-insured. Defendant's workers' compensation benefits were administered by Compensation Claims Solutions.
3. Genesis is the excess carrier in this matter.
4. The parties are subject to the North Carolina Workers' Compensation Act.
5. The date of injury is November 10, 1996.
6. The parties entered into a Form 21 Agreement on December 3, 1996. The Form 21 was filed with the Industrial Commission on January 27, 1997. Defendant has continued to pay plaintiff disability benefits and medical expenses.
7. During the pendency of this matter, the parties have formally mediated this claim on three separate occasions, the most recent mediation conference having been on May 1, 2001. At that time, the parties signed a mediation settlement agreement. Thereafter, defendant withdrew from the agreement. Plaintiff subsequently filed an amended Form 33 stating that "the employer and insurance company have failed to pay and comply and have breached the mediation agreement."
8. The parties entered the following exhibits into evidence at the hearing before Chief Deputy Commissioner Gheen:
a. Stipulated Exhibit #1: Pre-Trial Agreement.
 b. Plaintiff's Exhibit A: Mediation Settlement Agreement dated May 1, 2001.
 c. Defendant's Exhibit #1: defendant's authority/plaintiff's authority.
 d. Defendant's Exhibit #2: Affidavit of Camden Frazier dated January 17, 2002 and attached Budget Ordinance for Fiscal Year 2001-2002, incorporated by reference.
9. The issue to be determined by the Commission is whether the mediation settlement agreement signed by the parties on May 1, 2001 is enforceable.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff seeks enforcement of the terms agreed to by the parties at the mediated settlement conference and set forth in the mediated settlement agreement signed on May 1, 2001.
2. Defendant established a self-insurance program for workers' compensation in July 1991. Defendant has a self-insured retention in the amount of $250,000.00. Defendant has excess insurance coverage above that amount with Genesis, who is not a named party in this workers' compensation action.
3. The parties attended three mediation conferences to negotiate a settlement on this claim.
4. The mediation settlement conference on May 1, 2001 was attended by the following: Twyla Casey, on behalf of plaintiff; Kate George, Risk Manager for Wake County; Larry Justice, for Compensation Claims Solutions; Kathlyn C. Hobbs, counsel of record for defendant; Robert V. Lucas, counsel of record for plaintiff; William Stevenson, consultant on behalf of plaintiff; and John Aldridge, mediator.
5. The evidence of record establishes that the excess carrier participated by telephone in the mediation settlement conference on May 1, 2001.
6. Twyla Casey, plaintiff's daughter, attended the mediation on behalf of plaintiff. Ms. Casey has power of attorney to handle her mother's affairs due to a decline in her mother's health.
7. On May 1, 2001, the parties reached an agreement that resolved all remaining issues in this claim. A mediation settlement agreement was drafted which stated:
 "The parties to the above referenced claim have agreed to settlement on the following terms:
 1. The Defendants [sic] will pay to the employee the sum of $750,000.
 2. If temporary total benefits are being paid, the payments will continue until the Agreement is approved.
 3. a. . . . The Defendants will pay all related medical expenses. . . .
 b. The Defendants will pay all unpaid related medical expenses.
 The employee will execute a Clincher [Compromise Settlement] Agreement releasing the Defendants from all liability arising under the provisions of the N.C. Workers' Compenation Act whether by reason of an injury by accident or an occupational disease as defined by the Act. . . .
 The parties will share equally the mediator's fee. . . ."
8. The mediation settlement agreement was signed by: Twyla Casey on behalf of plaintiff; Larry Justice for Compensation Claims Solutions; Kathlyn C. Hobbs, counsel of record for defendant; Robert V. Lucas, counsel of record for plaintiff; and John Aldridge, mediator.
9. It was stipulated that all parties and their representatives agreed to the terms of the written agreement at the mediation settlement conference. Mr. Aldridge, as mediator, verified the agreed intent of the parties through his signature on the agreement.
10. Defendant was informed by Genesis on or before August 9, 2001 that Genesis was not willing to pay plaintiff under the terms of the mediation settlement agreement. Based upon this information, defendant withdrew its consent and informed plaintiff it would not implement the terms of the agreement.
11. On August 9, 2001, defendant's counsel informed plaintiff's counsel that defendant's excess carrier had changed its position subsequent to the mediation settlement conference. Based on this fact, defendant repudiated the agreement on or about August 9, 2001. No evidence was presented at the hearings before the Commission concerning the reasons for the excess carrier's change of position.
12. Defendant, having repudiated the agreement, did not prepare a compromise settlement agreement for plaintiff's execution.
13. Wake County adopted a Budget Ordinance on June 18, 2001, which authorized its County Manager, or designee, to make payments in an amount not to exceed $100,000.00 in "settlement of any liability claims against the County or against any of its officers or employees as provided by Resolution of May 20, 1995." Although the Resolution of May 20, 1995 was not introduced into evidence at the hearing before the Deputy Commissioner, it can reasonably be inferred from the evidence that the $100,000.00 limitation of authority to settle has existed in Wake County since 1995.
14. Camden Frazier, Finance Director of Wake County, prepared an Affidavit on January 17, 2002 stating that the Wake County Board of Commissioners must approve settlement of liability claims over $100,000.00 under certain procedures. Mr. Frazier stated that in "a claim that is expected to settle for an amount over $100,000.00, the parties are informed that any agreement reached during the mediation is subject to the approval by the Board of County Commissioners."
15. William H. Stephenson was employed by plaintiff as a consultant and was present at the mediation conference at which the agreement was executed. Mr. Stephenson testified and the Commission finds that defendant's process for approval of claims in excess of $100,000.00 was not raised or discussed at the mediation settlement conference. The necessity of Board approval also was not shown as a condition on the mediation settlement agreement. Mr. Stephenson stated that all persons attending the mediation settlement conference appeared fully authorized to act.
16. At all relevant times, plaintiff was, and remains, ready and willing to comply with the terms of the agreement reached on May 1, 2001.
17. Defendant has continued to pay plaintiff compensation for total disability benefits and medical expenses as approved by the Commission pursuant to the Form 21 filed on January 27, 1997.
18. The Wake County Board of Commissioners enacted Resolution R-02-33,Rejecting Workers' Compensation Settlement Agreement-Melva D. Lee on June 17, 2002, over one year after the mediation settlement agreement was executed. The resolution stated that the Board declined to approve the tentative settlement agreement with plaintiff because it was in excess of the authority to settle a claim granted by the Board to an employee or official. The Resolution further stated that County staff were directed not to prepare or execute any document in excess of granted authority unless approval of the Board was obtained first.
19. The issues presented in this case involve significant disputed questions of law. The prosecution and defense of this action have not been unfounded or litigious.
 ***********
Based upon the foregoing Stipulations and Findings of Facts, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The North Carolina Court of Appeals has recently held that a written memorandum of mediated settlement is a valid compromise settlement agreement subject to the approval of the Industrial Commission. Lemly v.Colvard Oil Company, ___ N.C. App. ___, 577 S.E.2d 712 (2003). Once submitted, the Commission must determine the agreement to be fair and just and in the best interest of all parties in order to approve the settlement agreement. N.C. Gen. Stat. § 97-17; Rule 502(1) of the North Carolina Workers' Compensation Rules.
2. Therefore, under Lemly v. Colvard Oil Company, supra, the mediation settlement agreement entered into in the case at bar was an enforceable agreement. However, the legal analysis in this case differs from Lemly
because defendant is a county government. The Deputy Commissioner held that the mediation settlement agreement was enforceable notwithstanding the lack of approval of the Wake County Board of Commissioners based upon the fact that all proper parties were present at the mediation conference and that the agreement did not specify that it was in any way contingent upon subsequent approval of the County Commissioners.
3. However, counties are creatures of the General Assembly and have only such powers as are prescribed by statute and those implied by law, and their powers can only be exercised by the board of commissioners.Insurance Co. v. Guilford County, 225 N.C. 293, 34 S.E.2d 430 (1945). Therefore, in order the enter into a valid and binding contract, a board of commissioners must act in its corporate capacity at a public meeting.Id.
4. The conduct of defendant and its representatives in this case in failing to notify plaintiff of the limited settlement authority delegated by the Board of County Commissioners was reprehensible and clearly misleading and therefore the equities undoubtedly reside with plaintiff, who relied on the promises of defendant's representatives. However, "[p]ersons dealing with a [county government] are charged with notice of all limitations upon the authority of its officers representing them."Moody v. Transylvania County, 271 N.C. 384, 389, 156 S.E.2d 716, 720
(1967), quoting 38 Am.Jur., 202, Municipal Corporations § 522. The scope of defendant's authority is a matter of public record. Rowe v.Franklin County, 318 N.C. 344, 351 n. 1, 349 S.E.2d 65, 69 (1986); L S Leasing, Inc. v. City of Winston-Salem, 122 N.C. App. 619,471 S.E.2d 118 (1996). Therefore, plaintiff may not recover under an equitable theory and cannot rely on defendant's apparent authority to invoke a defense of equitable estoppel. Data Gen. Corp. v. Cty. ofDurham, 143 N.C. App. 97, 545 S.E.2d 243 (2001).
5. The North Carolina Industrial Commission Rules for Mediated Settlement and Neutral Evaluation Conferences also put a plaintiff on notice of the possibility of board approval of a settlement. The Rules specifically contemplate that settlement of claims with a government entity may require approval by a board upon the conclusion of mediation. Rule 4(a)(1)(d) states that if any party is a governmental entity and if that entity proposes settlement terms that can only be approved by a board, the representative shall have authority to negotiate on behalf of the party and to make a recommendation to that board.
6. It appears from the evidence of record that since 1995 the Wake County manager or his designee was authorized to enter into settlement agreements up to $100,000.00 without first obtaining the approval of the Board of County Commissioners. Here, the settlement amount exceeded $100,000.00 and required Board approval. Because defendant's counsel and defendant's representative lacked the authority to legally bind defendant into an enforceable contract with plaintiff, no binding contract could result from the agreement. Guilford County Bd. of Comrs v. Trogdon,124 N.C. App. 741, 478 S.E.2d 643 (1996). If a contract entered into by a governmental entity is ultra vires due to the absence of authority to contract, the governmental entity may not be bound, even in an implied contract. Rockingham Square Shopping Center, Inc. v. Town of Madison,45 N.C. App. 249, 262 S.E. 705 (1980). An ultra vires contract is not voidable, but wholly void and of no legal effect because it could not be made. Id.
7. Even if defendant's representative did have the necessary authority to bind the County, the alleged contract would be invalid and unenforceable under N.C. Gen. Stat. § 159-28 without the required certificate of compliance. The Local Government Budget and Fiscal Control Act requires under N.C. Gen. Stat. § 159-28 that if an obligation is evidenced by a contract or agreement requiring the payment of money, the contract shall include on its face a certificate which complies with the requirements of N.C. Gen. Stat. § 159-28. The statute further states that an obligation incurred in violation of this subsection is invalid and may not be enforced. See Myers v. Town of Plymouth, 135 N.C. App. 707,522 S.E.2d 122 (1999) (citations omitted).
8. The Full Commission concludes as a matter of law that defendant's representative did not have the authority to bind defendant in an enforceable contract, and that the mediation settlement agreement signed by the parties was void and of no legal effect and therefore unenforceable. See, Data Gen. Corp. v. Cty. of Durham, supra; L SLeasing, Inc. v. City of Winston-Salem, supra.
9. This action was not brought or defended upon unreasonable grounds, and actions of the parties were not based upon stubborn, unfounded litigiousness. Therefore, neither party is entitled to the payment of attorney's fees under N.C. Gen. Stat. § 97-88.1. Sparks v. MountainBreeze Restaurant, 55 N.C. App. 663, 296 S.E.2d 575 (1982).
 ***********
Based on the foregoing findings of facts and conclusions of law, the Full Commission makes the following:
 ORDER
1. Under the law, plaintiff's request for enforcement of the Mediated Settlement Agreement signed on May 1, 2001 must be and is hereby DENIED.
 2. Each side shall bear its own costs.
This the ___ day of June 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/____________ BUCK LATTIMORE CHAIRMAN